# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

CINDY IDOM                                               PLAINTIFF

V.

NATCHEZ-ADAMS SCHOOL DISTRICT;
FREDERICK HILL, in both his official and
personal capacity; TANISHA W. SMITH, in
both her official and personal capacity; and
JOHN DOES (1-10)                           DEFENDANTS



CAUSE NO. _5:14cv 38 DCB-_
_mTP_

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
MAY 14 2014
BY ARTHUR JOHNSTON
DEPUTY

## COMPLAINT
### (Jury Trial Requested)

COMES NOW, the Plaintiff, Cindy Idom, by and through counsel, and files this, her

Complaint, against the Defendants, Natchez-Adams School District, Frederick Hill, in both

his official and personal capacity, Tanisha W. Smith, in both her official and personal

capacity, and John Does (1-10), and would show unto the Honorable Court as follows:

### PARTIES

1.       Plaintiff, Cindy Idom ("Idom"), is an adult resident citizen of East Baton

Rouge, Louisiana, who currently resides at 18353 Weatherwood Drive, Baton Rouge,

Louisiana 70817.  Plaintiff is a Caucasian female.

2.       Defendant, Natchez-Adams School District (the "District"), is a political

subdivision of the State of Mississippi acting under color of state law in Adams County,

Mississippi. The Mississippi Department of Education is the governing body of the District,

which is a part of Mississippi's public school system.  The District's governing body is the

District's Board of Trustees (the "Board").  The District may be served with process through

its Superintendent Frederick Hill, at 10 Homochitto Street, Natchez, Mississippi 39120.

3.       Defendant, Frederick Hill ("Hill"), is the Superintendent of the District and,

upon information and belief, is an adult resident citizen of Adams County, Mississippi. Hill is an African-American male who served as Plaintiff's head supervisor on behalf of the District, and is charged with the responsibility for carrying out the District's policies and procedures, plans, and programs, and is granted broad decision-making authority. Hill was hired by the District to serve in his capacity as Superintendent during the Summer of 2012. Hill may be served with process in both his personal and official capacity at his place of employment with the District at 10 Homochitto Street, Natchez, Mississippi 39120.

4.      Defendant, Tanisha W. Smith ("Smith"), is the Deputy Superintendent of the District and, upon information and belief, is an adult resident citizen of Adams County, Mississippi. Smith is an African-American female who also served as one of Plaintiff's supervisors on behalf of the District during the time in question. Smith was hired by the District to serve in her capacity as Deputy Superintendent during July 2012. Smith may be served with process in both her personal and official capacity at her place of employment with the District at 10 Homochitto Street, Natchez, Mississippi 39120.

5.      Defendants John Does (1-10) are individuals, entities, or agents who are yet unknown to Plaintiff who have or may have liability in the premises. Plaintiffs requests this Court to grant leave to amend this Complaint to add these parties when they are identified and have the Amended Complaint relate back to the original filing.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343, for the violation of Plaintiff's federal statutory rights and for violation of Plaintiff's civil rights under 42 U.S.C. § 1983. At all relevant times, Defendants acted under color of state law. Defendant, the District, is an "employer" within the meaning

2

of Title VII of the Civil Rights Act of 1964.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000, *et seq.*, 42 U.S.C. §§ 1981 & 1983, and the equal protection and due process clauses of the Fourteenth Amendment, U.S. Constitution.  This Court has supplemental jurisdiction over the state claims herein under 28 U.S.C. § 1367.

7.      This Court also has subject matter jurisdiction over Plaintiff's claims as the parties herein have complete diversity of citizenship and the amount in controversy exceeds the jurisdictional limit.

8.      Venue is properly established before the Court pursuant to 28 U.S.C. § 1391 as the Defendants are located in, and the Plaintiff's claims occurred or accrued in, Adams County, Mississippi, which is in the Southern District of Mississippi, Western Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff timely filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and has received a notice of the right-to-sue from the EEOC.  A copy of the right-to-sue letter is attached hereto as Exhibit "A".

## FACTS

10.      Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 9 above.

11.      Plaintiff was employed as a Principal for the District for around eleven (11) years, since the Fall of 2002 until she was constructively discharged by the District in July 2013, following the 2012-2013 school year.  Plaintiff had worked for the District beginning in 1999, when she was hired as a third grade teacher at McLaurin Elementary School.  On or about the Fall of 2002, Plaintiff was promoted by the District to serve as Principal of

West Elementary School ("West"), which she held until the events herein in 2013. In July 2012, Plaintiff and Defendant, the District, entered into a Contract of Employment for Plaintiff to again serve as Principal of West in the 2012-2013 school year (from 7/1/12 to 6/28/13). A copy of this Employment Contract is attached hereto as Exhibit "B". In February 2013, Plaintiff's employment contract was approved by the District's Board to be renewed as Principal at West for the 2013-2014 school year without any known stipulations. On or about May 24, 2013, after the 2012-2013 school year ended, but while still under contract, Plaintiff was reassigned by Defendant, Hill, to be the Principal at another public school in the District, Frazier Elementary School ("Frazier") for the 2013-2014 school year, and forced to take a reduction in working days and salary. Plaintiff was replaced as Principal at West by Ms. Alice Morrison (African-American). During late June and early July, 2013, Plaintiff worked as Principal at Frazier during summer school and was on the District's payroll as Principal for the 2013-2014 school year. However, before the 2013-2014 scholastic school year officially began, but while under contract for the same, Plaintiff was constructively discharged from her employment as Principal in total by Defendants on or about July 5, 2013, and was replaced by Mr. Ernest "Tony" Fields (African-American). Plaintiff had worked in public schools such as those within the District for about thirty-five (35) years (1973-1974, 1980-2013), and had worked in education for forty (40) years (beginning 1973).

12.     Plaintiff is highly qualified to work as a Principal for the District based upon her many years of experience, certifications, accomplishments, and excellent work record. Plaintiff holds a Class "AA" Certification Mississippi Administrator license with several endorsements (including Career Level Administrator and Elementary Education), was

nominated for Teacher of the Year in 1988, and was named an Unsung Hero in 2002 by the Natchez Democrat newspaper for her work with underprivileged children. While working for the District, Plaintiff represented the District as a presenter at various Mississippi conferences. As a result of Plaintiff's leadership during her eleven-year tenure as West's Principal, West won Mississippi PTA awards for parental involvement, won the Willie Mae Mitchell Grandparent Award, and had the largest PTA in Mississippi.

13.    As the Principal for West, Plaintiff successfully served under four (4) Superintendents for the District (other than Defendant, Hill), without complaints or any disciplinary measures being taken. Every other Superintendent or Deputy Superintendent consistently gave Plaintiff outstanding employment evaluations of her work performance.

14.    West was entering into its first year of taking the Mississippi Statewide Accountability testing ("accountability testing") during the 2012-2013 school year. Prior to the 2012-2013 school year, the District' public schools system aligned with a "grouped" campus system in which all of the District's students in the same grade attended the same school, and West housed all the Pre-Kindergarten and Kindergarten students in the District. During the Summer of 2012 (when Defendant, Hill, was being hired as Superintendent), the District's campus system was radically realigned to a "dispersed" elementary school system, to be implemented for the 2012-2013 school year. As a result, West was forced to take on an extremely high increase in students within the District, ranging from Kindergarten to Fifth (5th) grade.

15.    Beginning in May 2012 and during the Summer of 2012, Defendant, Hill (then-candidate for Superintendent) and Mrs. Joyce Johnson (Interim Superintendent) visited the West campus to determine the feasibility of the District's student population

increase brought about by the new "dispersed" elementary school system.  In June 2012, Plaintiff advised Mrs. Joyce Johnson that West did not have adequate classroom capacity to handle the student population increase, as projected by the District's Board.  Despite Plaintiff's objections, the Board implemented the "dispersed" elementary school system based on their old projections, and as a result West's student population far exceeded its capacity.

16.    Prior to and during the 2012-2013 school year, Plaintiff made multiple and unsuccessful requests to the District for additional classroom space to accommodate the enormous increase of students at West.  Namely, Plaintiff requested portable buildings, which were available to help house additional students forced upon West after the new realignment. However, delivery of the portable buildings to West was greatly delayed until October 2012–about two (2) months after the 2012-2013 scholastic school year had begun. Moreover, after the delivery, the portable buildings were unusable and could not be used during the 2012-2013 school year.  Also, the portable buildings required additional construction work, which had to be reworked several times, all of which lasted throughout and until the end of the 2012-2013 school year.  As a result, the staff and increased number of West elementary students were forced to spend the entire 2012-2013 school year with loud and distracting construction work.  Throughout the 2012-2013 school year, Plaintiff made multiple requests and pleas to Defendant, Hill, as well as to the District's Board, to resolve the foregoing issues with the portable buildings, and to make the portable buildings usable.  Instead, nothing was accomplished and Defendant, Hill stated that the portable buildings would not be available for use during the 2012-2013 school year. The District did nothing to help with West's student increase problems, and only made matters worse.

6

17.     Plaintiff faced additional inadequacies at West during the 2012-2013 school year that were not addressed by the Defendants (despite Plaintiff's multiple requests to correct them), which the other schools in the District with African-American Principals did not face, and further set up Plaintiff for failure, as follows:

(a)     The increase in the student population required Plaintiff to implement short-term plans to provide teacher adequate space.  For example, large common areas, including the library, cafeteria, and space formerly used for P.E. activities, had to be utilized as extra classroom space.  These large areas with multiple classrooms yielded chaotic results and multiple behavioral issues with the children.

(b)     The increased student volume meant West had no rooms or gym for P.E. classes, no science lab, and the cafeteria line was only a single-line for five-hundred fifty (550) elementary students.

(c)     Plaintiff's experienced Assistant Principal Ms. Roberta Phipps (African-American) was reassigned from West to Morgantown Middle School to replace its Caucasian Principal in October 2012, and Ms. Phipps' position at West was replaced by an inexperienced teacher, Mr. Curtis Smith (African-American), who further handicapped West's administrative operations due to his inexperience.

(d)     Plaintiff made multiple unsuccessful requests to Defendants, Hill and the District for facility improvements to West's campus and outside basketball court to bring back P.E. activities.

(e)     During realignment of the District prior to the 2012-2013 school year, several sub-par teachers were reassigned and dumped on West, most of whom came from McLaurin Elementary (whose principal was Alice Morrison, an African-American, and whose students had previously scored well in the Mississippi Statewide Accountability testing).  West (and its Caucasian principal) was forced to enter into its first testing year at a severe disadvantage, while McLaurin Elementary (and its African-American principal) received better faculty and thus greater assurance their test results would stay good.

(f)     Several good teachers at West were forced to be transferred away or were forced to retire as a result of being transferred against their will.

18.     During the 2012-2013 school year, Defendants, Hill and Smith, acting on behalf of the District, constantly harassed Plaintiff and deliberately created a hostile work

7

environment at West Elementary that was pervasively abusive, intimidating, and affected Plaintiff's work— all on account of her race and/or which other African-American Principals in the District did not receive— as described herein and further by the following:

(a)     Plaintiff was reprimanded by Defendant, Hill for dismissing the school buses a little earlier than normally allowed.  However, Mr. Larnell Ford (the District's Director of Operations) and Mr. Ray Brown (the District's Director of Security), both African-Americans, were involved in this incident and did not receive reprimands from Defendant, Hill.

(b)     In September, 2012, the District sent six (6) central office personnel representatives to each school unannounced, who then reported their findings to Defendants, Hill and Smith.  As a result, Hill and Smith issued several discipline memorandums.  However, Ms. Alice Morrison (then Principal at McLaurin Elementary) did not get this visit.

(c)     Defendant, Smith accused Plaintiff of being unprofessional for telling a third grade student's mom the end result from prior disciplinary hearings.

(d)     Defendant, Smith spoke down to Plaintiff at a meeting and said Plaintiff should be an assistant principal because Smith thought Plaintiff did not know how to handle certain "building" situations.  Defendant, Smith was always rude, intimidating, and  constantly belittling to Plaintiff.  In short, Smith never once offered Plaintiff any help because of her race.

(e)     Both Defendants, Hill and Smith would visit West every two (2) weeks and peek in on classrooms to try to scare teachers into performing their job.  They did not encourage or offer teamwork to help solve problems.  Neither offered any type of encouragement or complimented job performance.  Plaintiff was constantly frustrated and exhausted from the demanding, high pressure environment created by them.

The District's Board was notified of this harassment and abusive workplace environment, and its negative effects on Plaintiff's job performance, yet nothing was done to correct or address the wrongful conduct.

19.     On or about February 2013, the District's Board approved the renewal of Plaintiff's employment contract as Principal for the following school year, such approval being without any stipulations stated by the Board.  On May 24, 2013, Plaintiff was

unwillingly reassigned by the District to be Frazier's Principal for the following 2013-2014 school year.  Defendant, Hill denied Plaintiff's request and plea to stay at West for the following school year as had been promised.  As a result, Plaintiff was moved from West to Frazier on June 21, 2013.

20.    As mentioned, Ms. Alice Morrison (African-American) was chosen by the District to succeed Plaintiff as Principal at West after her forced reassignment to Frazier. During June 2013, Alice Morrison toured the still-unfinished portable buildings on West's campus with Defendant, Hill, and was allegedly assured by him that this invaluable resource would be ready and provided to her before she began her tenure.  Also, based on information and belief, plans to build an outdoor basketball court at West were approved when Alice Morrison was to become Principal.  Meanwhile, Plaintiff's requests for the same were ignored and rebuffed during her final school year at West.

21.    Days after Plaintiff was moved to Frazier on June 21, 2013, Defendants, Hill and Smith required Plaintiff to work as Principal at Frazier Elementary during summer school, which took time away from Plaintiff's preparation for the new school year. Meanwhile, Ms. Alice Morrison (the new African-American Principal at West) was not asked or required to work during summer school.  Plaintiff performed this assignment and worked summer school duty for several days without objection during late June and early July, 2013.

22.    On June 28, 2013, Plaintiff was emailed by the District's Human Resources Manager asking Plaintiff to schedule an "individual meeting" with Defendants, Hill and Smith.  On July 3, 2013, the President of the District's Board, Dr. H. W. Barnett, stated at a budget meeting that Accountability test scores had not been received by the District and

would not become available until the middle of August 2013. On July 5, 2013, Plaintiff was summoned to the "individual meeting" at Defendant, Hill's office.   During this brief meeting, Defendants, Hill and Smith, told Plaintiff that she was no longer the Principal at Frazier Elementary, as had been promised, without receiving prior written notice of nonreemployment.   The only option given to Plaintiff for re-employment would be a degrading demotion to an open teacher position (with reduced employment terms), otherwise Plaintiff would have to retire.   Defendants, Hill and Smith, alleged that the District's test results for the 2012-2013 school year provided the basis for Plaintiff's abrupt removal from office and demotion, yet at that time the results were unavailable. Defendants, Hill and Smith pressured Plaintiff to give an answer on the spot.   As a result of this pressure, Plaintiff's only option was to submit her retirement papers that day to avoid the embarrassment associated with being demoted after a highly decorated and successful education career of almost 40 years.   Plaintiff was never allowed an opportunity to have a hearing about the foregoing, to which she was entitled.   Contrary to District policy and Mississippi law, Plaintiff never received a notice of a hearing, nor was provided a hearing.   These adverse actions by Defendants, Hill and Smith, were in direct contradiction to the District's Board's prior approval of Plaintiff's Principal employment contract renewal.

23.   Plaintiff was the only principal in the District that was removed from office or demoted as a supposed result of the 2012-2013 test score results. The reasoning behind the Defendants' constructive discharge of Plaintiff was pretextual and/or the motivating factor for such adverse action was due to Plaintiff's race, as shown by the following:

(a)   The results of the District's Accountability test scores had not been released

10

when Plaintiff was compelled to resign from her position as Principal on July 5, 2013. In fact, the results were not available until August 2013, and were not publically released until around September 13, 2013.

(b)   The subsequently-released 2012-2013 test score results were worse for the District and almost all of its schools compared to the previous 2011-2012 school year. Per the 2012-2013 results, all schools (except one) in the District received an "F" Accountability grade, but West received the second highest overall score (Quality of Distribution Index ("QDI") score) in the District.

(c)   Morgantown Middle School has received a failing Accountability grade and the lowest QDI in the District for two (2) years running (per the 2012 and 2013 results), yet both of its African-American Assistant Principals, Mr. Tony Fields and Ms. Zandra McDonald, were not fired, demoted or ultimately suffered an adverse employment action. Instead, the District promoted both to Principal positions— Ms. McDonald is the Principal for the new Robert Lewis Magnet School, and Mr. Fields replaced Plaintiff as Principal at Frazier.

(d)   Two other African-American Principals employed during 2012-2013 by the District were allowed to remain in the same position, despite having received failing test scores that were lower than West's scores (Ms. Roberta Phipps, the Principal at Morgantown Middle School; and Mr. Sefukele Lewanika, the 9th grade Principal at Natchez High School).

24.   Pursuant to District and State-mandated procedures, all principals are given one (1) year to improve school scores if there is low performance. Since the 2012-2013 school year was West's first year to test, Plaintiff was forcibly reassigned to Frazier and was thereby not allowed an opportunity to improve West's test scores the following year. Rather than providing help or a plan of action to improve test scores, Defendants forced Plaintiff's move and ultimately terminated Plaintiff from her position as Principal because of her race.

25.   Following Plaintiff's constructive discharge, Plaintiff's brief position as Frazier's Principal was filled by Mr. Ernest "Tony" Fields, who is a younger African-American employee that was approved by the District's Board of Trustees. Prior, Mr. Fields had his administrator employment contract with the District (as the Assistant Principal at Morgantown Middle School) non-renewed by the Board and was thereby removed from that

position. Based upon information and belief, Mr. Fields is not as qualified for the Principal position as Plaintiff is.

### COUNT ONE
### VIOLATION OF TITLE VII - RACIAL DISCRIMINATION

26.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 25 above.

27.     Plaintiff is a female Caucasian employee protected under Title VII.  Plaintiff is also well-qualified for the position of Principal with a school in the District.

28.     As shown herein, Defendants discriminated against Plaintiff and treated her less favorably than similarly-situated African-American employees, which culminated in her constructive discharge, all on account of her race.  During the 2012-2013 school year and the prior Summer, Defendants, Hill and Smith engaged in a pattern and practice of wrongful and discriminatory conduct that was known and ratified by or agreed to by the District. Through this pattern and practice, Defendants, Hill and Smith would use or abuse their power and authority (granted by the District) to intentionally favor and set up African-American administrators/Principals with an easy road for success and promotion, while setting up Plaintiff and other Caucasian administrators/Principals for failure and compelling their demotion or constructive discharge. Solely at the Defendants' instance or ratification, Plaintiff was forced to work in an unacceptable and racially abusive and hostile work environment, wherein she continuously and repeatedly was subject to different treatment based on her race.  Also, Plaintiff was not provided access to the resources necessary to adequately perform her job, and her requests for these resources were repeatedly ignored.  Meanwhile, the Defendants collectively provided necessary work

resources, responded to requests for the same, and gave preferential treatment and a more favorable work environment to other similarly-situated African-American employees.

29.     It is the pattern and practice of the District, acting through the actions of Defendants, Hill and Smith, to hire, assign, and promote African-Americans to be administrators/Principals in the District, while failing to hire, assign, or promote, as well as demote or terminate, well-qualified Caucasian administrators/Principals.  Plaintiff is aware of only one (1) Caucasian Principal employed in the District; the rest are African-American.  Further, Plaintiff is aware of several Caucasian applicants for positions with the District who are extremely qualified (e.g., have Masters degrees), yet have not been given an opportunity for an interview.

30.     Around the 2012-2013 school year, Defendants, Hill and Smith, on behalf of the District, deliberately created an atmosphere at West Elementary that was hostile to Plaintiff's employment and was pervasively abusive, intimidating, and unreasonably interfered with Plaintiff's work, all on account of Plaintiff's race.  This hostile work environment was deliberately created to materially affect and unreasonably interfere with Plaintiff's work, to further the District's pattern and practice of favoring African-American administrators over Caucasian administrators, and ultimately to bully and humiliate Plaintiff into early retirement because of her race. This racially discriminatory hostile work environment and disparate treatment by Defendants, Hill and Smith, was so pervasive and consistent that it had become a pattern and practice of the District, and the District knew or should have known about it.  However, the District failed to do anything to stop or address the wrongful conduct.  Finally, Plaintiff personally believed that the foregoing wrongful conduct engaged in/ratified by Defendants created an abusive and hostile work

environment that made her employment intolerable, and suffered psychological and emotional distress during the time in question that continues to this day.

31.     Plaintiff reasonably felt compelled to retire and was thereby constructively discharged from her employment as a Principal with the District.  Plaintiff was pressured to hastily decide between a humiliating demotion or early retirement, and as such was encouraged and forced to choose early retirement instead of being subjected to a degrading demotion and reduction in job responsibility.  Also, Plaintiff could no longer tolerate the Defendants' racially discriminatory acts, harassment and, workplace, which were all calculated to encourage her early retirement and dismissal from employment.  Defendants collectively discharged Plaintiff because of her race.

32.     The Defendants have no legitimate, non-discriminatory justification for the adverse actions against Plaintiff, and their asserted reason for constructively discharging Plaintiff fails to withstand scrutiny and is, in fact, pretextual in nature.  The Defendants pretextual excuse of testing performance is unsupported, considering: the proximity and time between the availability of the Accountability test results and Plaintiff's constructive discharge; and Plaintiff's stellar performance history and West Elementary's relative 2012-2013 testing success in its first year test environment.  The true motivating factor was Defendants' racial discrimination against Plaintiff, given that Plaintiff was the only Principal in the District that was forced into early retirement and constructively discharged as a result of the 2012-2013 test results; and similarly-situated African-American administrators were treated differently and more favorably.

33.     Accordingly, Defendants have collectively violated Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, as a result of their disparate treatment,

racially abusive and hostile work environment, and intentional discrimination against Plaintiff in the terms and conditions of her employment due to her race.  This wrongful conduct has proximately caused Plaintiff's damages in the form of lost wages and benefits, mental anguish and emotional distress, and other economic and non-economic damages addressing Plaintiff's wrongful deprivation of all the benefits and privileges of employment.

34.    Defendants wilfully and maliciously perpetrated the foregoing intentional discrimination, and/or acted wantonly and with reckless disregard to their wrongful actions.  As such, an award of punitive damages is also requested.  Pursuant to Title VII, Plaintiff also requests an award of all attorney's fees and costs.

## COUNT TWO
### VIOLATION OF EQUAL PROTECTION/DUE PROCESS UNDER 42 U.S.C. § 1983

35.    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 34 above.

36.    The individual Defendants, Hill and Smith, intentionally discriminated against Plaintiff in the terms and conditions of her employment based on her race through their disparate and different treatment of Plaintiff and through their creation of a racially abusive and hostile work environment.  Further, Defendants, Hill and Smith committed such discriminatory act(s) while acting "under color" of state law, and pursuant to or as a result from a custom, practice, or policy of the District.  Thus, Defendants' racial discrimination against Plaintiff violated and deprived Plaintiff of her constitutional rights under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

37.    When Plaintiff was constructively discharged on July 5, 2013, by Defendants, Hill and Smith, which was ratified by Defendant, the District, Plaintiff was not given notice

or a hearing about the foregoing, and was denied due process. When this occurred, Plaintiff was entitled to certain procedures provided by both the District's written policies and procedures, and by the Mississippi Education and Employment Procedures Act, Miss. Code Ann. §§ 37-9-101, *et seq*. In contradiction thereto, Plaintiff was entitled to but was never provided a written notice of nonreemployment (and reasons for nonreemployment), or the option for a fair and impartial hearing regarding the same. Instead, Defendants provided Plaintiff an email concerning an "individual meeting" without explaining its purpose, and then surprised and humiliated Plaintiff at the meeting by terminating her employment because of her race. Based upon information and belief, the District's Board did not review or approve the subject constructive discharge before this meeting. Defendants never provided Plaintiff any notice of the nonreemployment or of a hearing. No hearing was ever held providing Plaintiff with Due Process. All of the foregoing occurred "under color" of state law, and all of this was conducted pursuant to a custom or policy of the District. Accordingly, Defendants' actions violated and deprived Plaintiff of her constitutional right to both substantive and procedural due process (guaranteed by both the U.S. and Mississippi Constitution). This also deprived Plaintiff of her equal protection rights under the U.S. Constitution.

38.     Plaintiff respectfully asks for relief pursuant to 42 U.S.C. § 1983 inasmuch she has been deprived of her constitutional rights "under color" of state law, pursuant to a custom or policy of Defendants. As a proximate result of Defendants' violations of Plaintiff's civil rights referenced above, Plaintiff has sustained lost wages and benefits, mental anguish and emotional distress, pain and suffering, humiliation and embarrassment, and other damages. Because this conduct was intentional and outrageous,

an award of punitive damages is also requested.  Pursuant to 42 U.S.C. § 1983, Plaintiff also requests an award of all attorney's fees and costs

## COUNT THREE
### NEGLIGENT HIRING, RETENTION, SUPERVISION AND CONTROL

39.    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 38 above.

40.    At all times material hereto, Defendant, the District, was negligent in hiring, retaining, supervising, and/or controlling its employees and/or agents, including (but not limited to) Defendants, Hill and Smith.  Defendants had a duty to exercise reasonable and ordinary care in the hiring, supervising, and training of its supervisors, as well as in the maintenance of a discrimination-free workplace.  Defendants breached that duty in the following respects:

(a)    Failing to adequately inquire into the competence of its employees, agents, and Defendants, Hill and Smith.

(b)    Based upon information and belief, Defendant, Smith was hired without being first issued her Mississippi Administrator license.

(c)    Failing to adequately train Defendants, Hill and Smith.

(d)    Failing to properly supervise Defendants, Hill and Smith.

(e)    Other acts which will be shown at trial.

41.    The above actions constitute negligence and were each a proximate cause of the pattern and practice of wrongful conduct engaged in, ratified by, or agreed to by Defendants.  The above negligence by Defendants also proximately caused Plaintiff's damages described herein.

### COUNT FOUR
#### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

42.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 41 above.

43.     The Defendants engaged in, directed, and/or ratified a course of outrageous conduct towards Plaintiff, with the intention to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. In the alternative, the Defendants knew or reasonably should have known that the wrongful actions described herein would and did proximately result in physical and emotional distress to Plaintiff. Defendants had a duty to stop engaging in or ratifying and/or prevent the actions herein, but negligently failed to do so in breach of their duty.

44.     As a proximate result of this wrongful conduct, whether intentional or negligent, Plaintiff has suffered and continues to suffer emotional anguish, mental distress, humiliation, and other emotional and physical damages, and seeks a judgment for all actual damages proximately caused by this conduct and an award of punitive damages.

### COUNT FIVE
#### DEFAMATION: LIBEL/SLANDER

45.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 44 above.

46.     Plaintiff has the reasonable belief that Defendants have, either directly or by ratification, verbally and/or in writing published false information concerning Plaintiff to former co-workers, parents, and members of the community, that Plaitniff was somehow incompetent or any other similar terms, all for the malicious purpose of damaging Plaintiff's reputation and inflicting mental anguish. At all times relevant to these claims,

18

all Defendants were acting within the scope and course of their employment.

47.     This defamation proximately caused damages to Plaintiff's personal reputation and character, caused Plaintiff to suffer mental anguish and emotional distress, and has otherwise caused economic losses to Plaintiff. As a result of these aforesaid acts, Plaintiff suffered and continues to suffer severe, irreparable injuries. This defamation was done intentionally and/or with actual malice, with the intent to injure the Plaintiff. As a proximate result of said defamation, Plaintiff seeks an award of actual damages and an assessment of punitive damages in an amount to be determined by the jury.

## COUNT SIX
### BREACH OF EMPLOYMENT CONTRACT

48.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 47 above.

49.     Plaintiff was employed as a Principal for the District, pursuant to an employment contract between Plaintiff and the District, for the 2012-2013 school year. Consistent with all prior employment contracts with the District, Plaintiff's contract period ran from the beginning of July until the end of June in the succeeding year. In February 2013, Plaintiff's employment contract was approved (and accepted) by the District's Board to be renewed as Principal at West for the 2013-2014 school year without any known stipulations. Plaintiff was on the District's payroll as a Principal after July 1, 2013, or after and during the term of her 2013-2014 employment contract with the District was supposed to commence. As such, there existed a valid employment contract formed between Plaintiff and Defendant, the District for her employment as Principal during the 2013-2014 school year.

50.     However, Defendants collectively failed or refused to perform their promises and obligations under the aforesaid renewed and binding employment contract with Plaintiff in material breach of the contract. Defendant, the District ratified or approved the wrongful constructive discharge of Plaintiff's employment on account of her race on 7/5/13, and thereby unilaterally and intentionally terminated the subject employment contract and/or approval without proper grounds or basis, in material breach thereof. Defendant, the District also materially breached its employment contract with Plaintiff, and/or approval thereof, by allowing the failure by its representatives to follow the District's policies and procedures (and Mississippi law) as provided herein and to be fully determined at trial.

51.     As a proximate result of the District's breach of contract, Plaintiff has sustained monetary and non-monetary damages, which Plaintiff is entitled to recover, in the form of lost wages and benefits, mental distress and emotional anguish and other consequential or incidental damages. The Defendant, the District's breach was intentional, gross and willful and/or was attended by intentional wrong, insult, abuse or such gross negligence as amounts to an independent tort, entitling Plaintiff to punitive damages over and above an award of actual damages.

## COUNT SEVEN
### TORTUOUS INTERFERENCE WITH EMPLOYMENT CONTRACT/BUSINESS RELATIONS

52.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 51 above.

53.     Defendants, Hill and Smith's wrongful actions herein constitute tortuous interference with her employment contract (and/or approval thereof) with the District,

and/or business relations with the District, as described herein.  Defendants Hill and Smith, directly interfered with the contractual and/or employment relationship between Plaintiff and the District, when they wrongfully terminated Plaintiff's employment with the District for the sole and improper reason of Plaintiff's race.  As result, Plaintiff lost her employment, as well as an opportunity for advancement or promotion within the public school system.

54.   As a direct and proximate cause of the tortuous interference undertaken by these Defendants, Plaintiff has suffered financial losses and other damages, including lost wages and benefits, mental anguish and emotional distress, and other economic and non-economic damages.  This tortuous interference was intentional and/or accompanied by conduct which constitutes gross negligence, malice, and/or reckless disregard for the rights of Plaintiff, and as such Plaintiff is entitled to recover an award for punitive damages over and above an award of actual damages.

### COUNT EIGHT
**BREACH OF DISTRICT POLICIES AND PROCEDURES**
**(Breach of Unwritten Employment Contract)**

55.   Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 54 above.

56.   Each year, Defendant, the District, furnishes all of its "certified" employees (including Plaintiff) with a manual of the District's policies and procedures, entitled the "Natchez-Adams School District Certified Employee Handbook".  This manual sets forth specific procedures and terms to be followed by Defendants in regards to, among others, employment decisions and the terms and conditions of employment.  For the most part, these specific policies and procedures are also required by the Mississippi Education and Employment Procedures Act, Miss. Code Ann. §§ 37-9-101, *et seq.*

21

57.     Defendants owed Plaintiff a duty to comply with the District's own policies and procedures specifically provided for in the subject manual.  However, as provided herein, the District's policies and procedures had not been adhered or complied with, and also the laws of the state of Mississippi have not been complied with.  In addition to the foregoing, such violations of policies and procedures and/or Mississippi law include, but is not limited to, the following (which occurred/failed to occur around and about the 2012-2013 school year):

(a)     Defendant, Hill was required but failed to allow Plaintiff to attend and earn credits for sessions of School Executive Management Institute ("SEMI") continuing education for principals.

(b)     The Board of the District was required to rent or lease facilities (including portable buildings) for public schools needing immediate space, such as West during the 2012-2013 school year, which never occurred for Plaintiff while she was the Principal at West during the 2012-2013 school year.

(c)     Defendant, Hill was required but failed to formulate and implement an annual performance appraisal system based on job descriptions and on-the-job performance.

(d)     The District was required to give principals (like Plaintiff) prior written notification of employment contract non-renewals, and the reasons therefor, by at least the March 1, 2013, deadline (per District policy and Mississippi law).  However, Defendants failed to give Plaintiff any prior written notice of the non-renewal / constructive discharge of Plaintiff's employment as Principal, as well as the reasons for the same.

(e)     Plaintiff was entitled to, but never received the opportunity for, a fair and impartial hearing regarding Defendants' non-renewal / constructive discharge of Plaintiff, which was never held.

(f)     Defendants collectively violated the District's anti-discrimination policy against Plaintiff.

(g)     Others to be determined.

58.     Defendants' failure to follow the specific terms of the District's employee

manual renders them liable to Plaintiff for breach of contract. As a proximate result of Defendants' breaches of policies and procedures, Plaintiff has sustained lost wages and benefits, mental distress and emotional anguish and other damages. This breach was intentional and/or accompanied by conduct which constitutes gross negligence, malice, and/or reckless disregard for the rights of Plaintiff, and as such Plaintiff is entitled to recover an award for punitive damages over and above an award of actual damages.

## INJURIES/DAMAGES

59.    Plaintiff readopts and reasserts all allegations set out in Paragraphs 1 through 58 above.

60.    Plaintiff is entitled to an award of attorney's fees and costs, as pursuant to Title VII, 42 U.S.C. § 2000, *et seq.*, and pursuant to 42 U.S.C. § 1983.

61.    As a direct and proximate cause of the foregoing conduct of all Defendants, Plaintiff suffered, and is entitled to recover from Defendants, the following damages:

(a)    Past and future lost wages and benefits, including back pay, fringe benefits and other economic damages;

(b)    Mental anguish and emotional distress;

(c)    Damages to Plaintiff's personal reputation, pain and suffering, humiliation, and embarrassment;

(d)    Actual and compensatory damages;

(e)    Incidental and consequential damages;

(f)    Punitive damages;

(g)    Interest damages as allowed by law;

(h)    Attorney's fees and costs; and

(i)    Other damages to be established.

23

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Cindy Idom, respectfully moves this Honorable Court for a trial by jury and to enter judgment in favor of Plaintiff against Defendants, Natchez-Adams School District, Frederick Hill, in both his official and personal capacity, Tanisha W. Smith, in both her official and personal capacity, and John Does (1-10), in an amount as may be determined by the jury to fully compensate Plaintiff for all actual and punitive damages, plus pre- and post-judgment interest, attorneys' fees and all costs incurred in filing and prosecuting the subject action, and for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 12ᵗʰ day of May, 2014.

CINDY IDOM - Plaintiff

By:  _Will Ivison_____

Ken R. Adcock (MSB #1150)
William C. Ivison (MSB #104213)
*Attorneys for Plaintiff*

OF COUNSEL:

ADCOCK & MORRISON, PLLC
199 Charmant Drive, Suite 1/39157
Post Office Box 3308
Ridgeland, Mississippi 39158
Telephone: (601) 898-9887
Facsimile:  (601) 898-9860
kadcock@adcockandmorrison.com
wivison@adcockandmorrison.com