IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CINDY IDOM                                          PLAINTIFF

VS.                          CIVIL ACTION NO: 5:14-cv-38-DCB-MTP

NATCHEZ-ADAMS SCHOOL DISTRICT and FREDERICK
HILL and TANISHA W. SMITH, in their
individual and official capacities              DEFENDANTS

ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendants', Natchez-Adams School District, Frederick Hill, and Tanisha W. Smith, Motion for Summary Judgment **[docket entry no. 43]**. Having reviewed the motions and responses, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Factual and Procedural Background

Plaintiff Cindy Idom, who is Caucasian, began working for Defendant Natchez-Adams School District (the "School District") in 1999 when she was hired as a third grade teacher. In the Fall of 2002, Idom was promoted to Principal at West Elementary School ("West"). Defendant Frederick Hill is the Superintendent of the School District, and Defendant Tanisha W. Smith is the Deputy Superintendent. Both are African-American. In July of 2012, Idom and the School District entered into a new contract for Idom to

1

continue as the principal at West for the 2012-2013 school year. That school year was to be the first year that West participated in the Mississippi Statewide Accountability testing. Prior to this year, West and the other schools in the district had been organized under a "'grouped' campus system in which all of the District's students in the same grade attended the same school, and West housed all the Pre-Kindergarten and Kindergarten students in the District." Compl. ¶14, ECF No. 1. The summer before the 2012-2013 school year, "the District's campus system was radically realigned to a 'dispersed' elementary school," and West now houses students "ranging from Kindergarten to Fifth (5th) grade." Compl. ¶14. Under the new "dispersed" system, West "did not have adequate classroom capacity to handle the student population increase," and West received additional portable buildings to serve as classrooms. These buildings were delivered two months after the school year started and had various problems that prevented their utilization. Therefore, West had to implement short term strategies for additional classroom space which caused disruptions. Idom claims the School District did little to alleviate these problems while she was principal.

In February of 2013, the School District renewed Idom's contract for another year. In May, Hill reassigned Idom to another elementary school to serve as its principal. The transfer was effective June 21, 2013. On June 28, 2013, Idom received an email

from the School District's Human Resource Manager "to schedule an 'individual meeting' with . . . Hill and Smith." Compl. ¶ 22. Idom, Hill, and Smith met on July 5, 2013. What transpired at that meeting is the subject of dispute. Idom alleges that she was given the choice between early retirement and demotion to a teaching position. Hill and Smith assert that Idom was merely informed that her position could be subject to termination or transfer as a result of West's scores in the accountability testing. As of the date of the meeting, the School District had not received the final results of the accountability testing, but it had received preliminary results that awarded West an F rating. When the results were finalized, West still received an F, but it scored the second highest in the district. On July 5, 2013, Idom signed a notice of intent to retire.

Idom first pursued a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), but after review of her claim, the EEOC determined it would not pursue any suit on her behalf and authorized Idom to bring a civil suit on her own behalf.

On May 14, 2014, Idom brought suit in federal court alleging claims for: (1) racial discrimination in violation of Title VII; (2) violations of her equal protection and due process rights through Section 1983; (3) negligent hiring, retention, supervision, and control; (4) intentional or negligent infliction of emotional

distress; (5) defamation; (6) breach of employment contract; (7) tortious interference with employment contract / business relations; and (8) breach of district policies and procedures (breach of unwritten employment contract). The School District, Hill, and Smith moved for summary judgment on April 13, 2015. A pretrial conference in this case is set for July 16, 2015.

## II. Analysis

### A. The Legal Standards

1. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The moving party bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to

the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must meet his burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A party asserting a fact is "genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

2. Qualified Immunity

"Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "A

qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, . . . [t]he plaintiff bears the burden of negating the qualified immunity, but all inferences are drawn in his favor." Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). In assessing a claim of qualified immunity, courts apply the two pronged analysis established in Saucier v. Katz, 533 U.S. 194 (2001), but the court may address the prongs in any order, Pearson, 555 U.S. at 225.

One prong asks "whether Plaintiff's allegations establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730 (2002). The second prong asks "whether the right was clearly established." Saucier, 533 U.S. at 201. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Hill and Smith have both asserted a defense of qualified immunity against the Section 1983 claims. As a municipality, the School District "do[es] not enjoy immunity from suit, either absolute or qualified, under § 1983." Burge v. Parish of St. Tammany, 187 F.3d 452, 466-67 (5th Cir. 1999) (citing Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993)).

### B. The Claims

The claims against Hill and Smith in their official capacities

are analyzed identically to the claims against the School District "[b]ecause a suit against an official in his official capacity 'is no different from a suit against' a governmental entity." Shaidnagle v. Adams Cnty., Miss., — F. Supp. 3d —, —; 2015 WL 365820, at *3 (S.D. Miss. 2015) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)); see also Burge, 187 F.3d at 466 (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 n.55 (1978)) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent.").

1. Racial Discrimination Under Title VII

The School District argues that Idom has not shown that she suffered an adverse employment decision because she chose to retire. Idom argues that she was constructively discharged.

To succeed on a claim of racial discrimination under Title VII, a plaintiff must first exhaust her administrative remedies. See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Idom has done this by first pursuing her claim before the EEOC and receiving a right to sue letter. After exhaustion of administrative remedies, a plaintiff may prove her case through direct or circumstantial evidence. Id. Where a plaintiff seeks to prove her case through circumstantial evidence, as here, the court applies the three-part McDonnell Douglas burden-shifting framework. Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 881 (5th Cir. 2003). "[A]

7

plaintiff must first present a prima facie case of discrimination." Id. A prima facie case of discrimination requires that the plaintiff show: (1) membership in a protected group; (2) qualification for the position at issue; (3) discharge or some adverse employment action by the employer; and (4) replacement by someone outside the protected group or less favorable treatment than other similarly situated employees outside the protected group. McCoy, 492 F.3d at 556.

> If the plaintiff can present a prima facie case, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a "legitimate, nondiscriminatory justification for its actions." If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination.

Manning, 332 F.3d at 881 (quoting Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)).

The School District concedes "that members of the racial majority (Caucasian) are eligible to substantiate claims based on racial discrimination despite that they are not members of a racial minority. . . ." Mem. Supp. 5, ECF No. 44; see also, Byers v. Dallas Morning News, Inc., 209 F.3d 419, 426 (5th Cir. 2000) ("[T]he fact that [the plaintiff] was not a racial minority in his workplace does not prevent him from making a prima facie case of reverse discrimination under Title VII.").

The School District also concedes that Idom "held the credentials to be a principal" but asserts that she "had proven

herself unqualified for the position based upon the 'Failing' status of her school." Mem. Supp. 5. There is a distinction between being qualified for a job and being good at it. By conceding her credentials for the position, the School Board has admitted Idom's qualification.

After Idom resigned, she was replaced as principal by a younger African-American at the elementary school she was transferred to, and she was replaced at West by another African-American.

The School District's chief argument is that because Idom resigned she did not suffer an adverse employment action. Idom argues that she satisfies this element through her allegation of constructive discharge. "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771 (5th Cir. 2001). Courts weigh the following factors to determine constructive discharge:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Dediol v. Best Chevrolet, Inc., 655 F.3d 435, 444 (5th Cir. 2011). "This inquiry is an objective, 'reasonable employee,' test under which [courts] ask 'whether a reasonable person in the plaintiff's

shoes would have felt compelled to resign.'" <u>McCoy</u>, 492 F.3d at 557 (quoting <u>Haley</u>, 391 F.3d at 650). Constructive discharge requires "a 'greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment.'" <u>Dediol</u>, 655 F.3d at 444 (quoting <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 378 (5th Cir. 1998)).

Here, Idom was not demoted. Her salary was not reduced. Her job responsibilities were not reduced. She was not reassigned to menial or degrading work. She was not reassigned to work under a younger supervisor. Idom does argue that she faced harassment at work. And, as discussed above, she was offered early retirement or continued employment under less favorable terms. Further, Idom was transferred from West to the principalship at another elementary school, though she does not argue how this transfer would satisfy any of the factors.

As for harassment, Idom states that defendants "created an atmosphere at [West] that was hostile to Plaintiff's employment and was pervasively abusive, intimidating, and unreasonably interfered with Plaintiff's work." Compl. ¶30. Further, Idom alleges that she was reprimanded when African-American administrators were not under similar circumstances, that she was subjected to unannounced visits from school district officials whereas her African-American counterparts were not, that Smith accused her of being unprofessional, that Smith spoke down to her and "said [Idom]

10

should be an assistant principal because Smith thought [Idom] did not know how to handle certain 'building' situations." Compl. ¶ 18. "Smith was always rude, intimidating, and constantly belittling" towards Idom. Compl. ¶ 18. In her deposition, Idom

> testified that Defendants, Hill and Smith, were untrusting and unsupportive, and would intentionally embarrass and humiliate her, gang up on her, make unreasonable demands (despite Plaintiff always meeting her goals and objectives), and always take the opposite position than Plaintiff on any issue, all on account of her race. Defendant, Hill was extremely sarcastic, demeaning and belittling to Plaintiff (and other Caucasians), and Defendant, Smith was hateful towards Plaintiff and publicly questioned her leadership and decision-making.

Mem. Opp. 3-4.

These facts are sufficient to make out a prima facie case under Title VII. Therefore, the Court examines the reasons offered in justification for Idom's constructive discharge. The School District gives as its reasons that "the school at which [Idom] had just been principal received a 'Failing' rating and she had proven herself unable to perform her job duties to the satisfaction of the [School] District despite being given ample opportunity, instruction, and time to improve her performance." Mem. Supp. 7. The Court finds that terminating an employee for poor performance, especially after being given an opportunity to improve, is a legitimate, non-discriminatory justification. Thus, the burden shifts back to Idom to show this is a mere pretext.

To carry her burden, Idom "must produce substantial evidence

indicating that the proffered legitimate reason is a pretext for discrimination" as to each reason offered by the defendants. <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." <u>Id.</u> (internal citations and quotation marks omitted). To show disparate treatment, Idom argues that

> [Two O]ther Caucasian Principals in the District[] were treated in the same manner as Plaintiff by Defendants . . ., by being terminated from their Principalship at their respective school and only being offered a demotion as their other option. Moreover, all similarly situated Afircan American administrators in "failing" school were not treated in the "same manner" as Plaintiff, . . . and in some instances were actually promoted.

Mem. Opp. 25. As to falsity and unworthiness of credence, Idom argues that at the time of her constructive discharge, the School District had only received a "prediction of a failing grade," not a final grade, and West ultimately received the "second (2nd) highest accountability grade in the [d]istrict," though it was still a failing grade. Mem. Opp. 24. Further, she argues that she "was forcibly reassigned to [another school] and was thereby not allowed an opportunity to improve West's test scores the following year."[1] Compl. ¶ 24. The Court finds that this evidence is

---

[1] Idom also alleges in her complaint that this was in violation of "District and State-mandated procedures [that] all

12

sufficient to create a jury question as to whether the proffered reasons for Idom's constructive discharge were a mere pretext disguising the School District's discriminatory motive. The Court will, therefore, deny the motion as to this claim against the School District.

The analysis for Hill and Smith is distinct but brief. "Individuals are not liable under Title VII in either their individual or official capacities." Ackel v. Nat'l Comms., Inc., 339 F.3d 376, 381 n.1 (5th Cir. 2003) (citing Smith v. Amedisys Inc., 298 F.3d 434, 448-49 (5th Cir. 2002)). The Court, therefore, will grant summary judgment in favor of Hill and Smith on this claim.

2. Due Process Rights

In her complaint, Idom alleges that she was entitled to and did not receive "written notice of nonreemployment (and reasons for nonreemployment), or the option for a fair and impartial hearing regarding the same." Compl. ¶ 37. Idom argues that her entitlement to these procedural protections comes from the Education Employment Procedures Law of 2001[2] ("the Act") and the School District's own written policies and procedures. The School District, Hill, and

---

principals are given one (1) year to improve school scores if there is low performance." Compl. ¶ 24.

  [2] Miss. Code Ann. §§ 37-9-101, et seq. (2001). Idom refers to this law as the Mississippi Education and Employment Procedures Act, but the statute makes clear its name.

Smith argue that because Idom was never terminated but instead resigned, she is not entitled to either notice or a hearing.

The Act provides that

> [i]f a recommendation is made by the school district not to offer an employee a renewal contract for a successive year, written notice of the proposed nonreemployment stating the reasons for the proposed nonreemployment shall be given. . . . [I]f the employee is a principal, the superintendent, without further board action, shall give notice of nonreemployment on or before March 1.

Miss. Code Ann. § 37-9-105(a) (2012). The Act further provides that

> [a]n employee who has received notice . . . upon written request from the employee received by the district within ten (10) days of receipt of the notice by the employee, shall be entitled to: [w]ritten notice of the specific reasons for nonreemployment, together with a summary of the factual basis therefor . . .; [a]n opportunity for a hearing at which to present matters relevant to the reasons given for the proposed nonreemployment . . .; [and r]eceive a fair and impartial hearing before the board or hearing officer. . . .

Miss. Code Ann. § 37-9-109(a)-(c) (2012). Neither side has placed the language of the district policies into the record for the Court to analyze, but the Court assumes that they are modeled on the statutory requirements.

The law in this Circuit, which neither plaintiff nor defendant cites to, states that "[c]onstructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures." Fowler v. Carrollton Public Library, 799 F.2d 976, 981 (5th Cir. 1986). Idom has not alleged this reason for her alleged constructive discharge, and the Court, finding this fatal to her

claim, will grant summary judgment in favor of the School District.

Turning to Hill and Smith, both have raised the defense of qualified immunity. To overcome this defense, Idom must allege that a clearly established constitutional right was violated. See Saucier, 533 U.S. at 201. The Court finds that Idom has not alleged a constitutional violation because she has not alleged that the reason for her constructive termination was to avoid a hearing but only that it was because of her race. Therefore, Hill and Smith are entitled to summary judgment based on their qualified immunity.

3. Equal Protection

"Section 1983 and title VII are 'parallel causes of action.'" Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 166 (5th Cir. 2007) (quoting Cervantez v. Bexar Cnty. Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996)). "Accordingly, the 'inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.'" Id. (quoting Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)).

As explained above, factual questions remain as to whether Idom suffered a constructive discharge as a result of impermissible discrimination by the School District. But this alone would not render the School District liable under Section 1983. "A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects a person to a

15

deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). "Plaintiffs who seek to impose liability under § 1983 therefore must prove that an 'action pursuant to official municipal policy' caused their injury." Alexander v. Brookhaven Sch. Dist., 428 F. App'x 303, 307 (5th Cir. 2011) (per curiam) (quoting Connick, 131 S. Ct. at 1359). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359. Who is a policymaker is a question of state law. McMillian v. Monroe Cnty., Ala., 520 U.S. 781, 786 (1997) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)). The responsibilities and powers of a superintendent are set by statute. See Miss. Code Ann. § 37-9-14 (2008); see also, Covington Cnty. Sch. Dist. v. Magee, 29 So. 3d 1, 6 (Miss. 2010). The Court finds that Hill and Smith are policymakers for the allegations based on support of teaching and administrative staff made out by Idom, detailed below. The statute makes clear that superintendents are "administrat[ors] of the schools within [their] district" and have wide responsibilities involving the allocation of district funds. See § 37-9-14. The decisions made, as alleged, by Hill and Smith involve the distribution of district resources among the various

16

schools.

> Idom has alleged an unwritten policy of racial discrimination:
>
> Hill and Smith engaged in a pattern and practice of wrongful and discriminatory conduct that was known and ratified by or agreed to by the [School] District. Through this pattern and practice, Defendants, Hill and Smith would use or abuse their power and authority (granted by the [School] District) to intentionally favor and set up African-American administrators/Principals with an easy road for success and promotion, while setting up Plaintiff and other Caucasian administrators/Principals for failure compelling their demotion or constructive discharge.

Compl. ¶ 28. In her complaint, Idom makes more clear the various ways in which the defendants made her job more difficult, difficulties "which the other schools in the District with African-American Principals did not face." Compl. ¶ 17.

> (a) The increase in the student population required Plaintiff to implement short-term plans to provide teacher[s] adequate space. For example, large common areas including the library, cafeteria, and space formerly used for P.E. activities, had to be utilized as extra classroom space. These large areas with multiple classrooms yielded chaotic results and multiple behavioral issue with the children.
>
> (b) The increased student volume meant West had no rooms or gym for P.E. classes, no science lab, and the cafeteria line was only a single-line for Five-hundred fifty (550) elementary students.
>
> (c) Plaintiff's experienced Assistant Principal . . . (African-American) was reassigned from West to [another school] to replace its Caucasian Principal in October 2012, and [the Assistant Principal] position at West was [filled] by an inexperienced teacher . . . (African-American), who further handicapped West's administrative operations due to his inexperience.
>
> (d) Plaintiff made multiple unsuccessful requests to Defendants, Hill and the [School] District for facility

improvements to West's campus and outside basketball court to bring back P.E. activities.

(e) During realignment of the District prior to the 2012-2013 school year, several sub-par teacher were reassigned and dumped on West, most of whom came from [a particular school] (whose principal was . . . African-American, and whose students had previously scored well in the Mississippi Statewide Accountability testing). West (and its Caucasian principal) was forced to enter into its first testing year at a severe disadvantage, while [the aforementioned school] (and its African-American principal) received better faculty and thus greater assurance their test results would stay good.

(f) Several good teachers at West were forced to be transferred away or were forced to retire as a result of being transferred against their will.

Compl. ¶ 17. Further, Idom had requested portable buildings to accommodate the increased student population at West, but there were problems with this solution. The buildings did not arrive until two months into the school year and, because they needed additional construction work, were unusable throughout the school year, and the work itself done on the buildings was loud and distracting. Compl. ¶16.

Having found that Idom has alleged a municipal policy of discrimination, the Court will deny the motion for summary judgment on this claim. The Court next examines the individual liability of Hill and Smith.

Unlike the analysis under Title VII, Hill and Smith can be found liable in a Section 1983 claim. See King v. Lawrence Cnty. Bd. Of Educ., No. 2:12cv68, 2013 WL 319286, at *3 (S.D. Miss. Jan. 28, 2013) ("[W]hile Section 1981 does not provide an independent

18

cause of action against individuals acting under color of state law, such individuals may be personally liable under Section 1983 for the violation of rights secured by Section 1981."). But their liability is subject to their qualified immunity. The Court is unable to resolve the issue of whether Idom has overcome the defense of qualified immunity on this claim, at this time. Having conferred with the parties in a telephonic conference, the Court, with consent of the parties, will hold this motion–whether Hill and Smith are entitled to qualified immunity in Idom's claim for violation of her equal protection rights–in abeyance until such time at trial that a ruling on it can be made.

4. Negligent Hiring and Supervision

The School District, Hill, and Smith argue that this claim is subject to the Mississippi Tort Claims Act ("MTCA") and that Idom did not comply with the notice requirement. Idom does not discuss this claim in her opposition to the motion. Because the "[f]ailure to address a claim results in the abandonment thereof[,]" the Court finds that Idom has conceded summary judgment on her claims for negligent hiring and supervision. See City of Canton v. Nissan N. Am., Inc., 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) (quoting Sanders v. Sailormen, Inc., No. 3:10cv606, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012)). Therefore, the motion will be granted on this claim as to all three defendants.

5. Infliction of Emotional Distress

Idom has made claims for both intentional and negligent infliction of emotional distress.

The defendants argue that these claims are subject to the MTCA notice requirements and that Idom did not comply with them. Idom only discusses her claim for intentional infliction of emotional distress in her response. Therefore, the Court will grant the motion for summary judgment on her claim for negligent infliction of emotional distress. See id.

Idom argues that this claim is not subject to the MTCA because it is based on the malicious conduct of the defendants. "Intentional infliction of emotional distress can be predicated on behavior that is 'malicious, intentional, willful, wanton, grossly careless, indifferent or reckless.' Thus to the extent intentional infliction of emotional distress is predicated on malicious conduct, the claim would be outside the scope of the MTCA." Weible v. Univ. of So. Miss., 89 So. 3d 51, 64 (Miss. Ct. App. 2011) (quoting Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc., 759 So. 2d 1203, 1211 (Miss. 2000)) (internal citations omitted). Because Idom has alleged that the defendants acted with malice in intentionally inflicting emotional distress on her, her claim falls outside the scope of the MTCA and is not subject to the notice requirements. "[I]t is clear that claims as to which malice is not a necessary element of proof still fall outside the MTCA if the plaintiff alleges that the defendant(s) acted with malice."

<u>Delaney v. Miss. Dep't of Public Safety</u>, No. 3:12cv229, 2013 WL 286365, at *6 (S.D. Miss. Jan. 24 2013). Therefore, the Court will deny summary judgment as to this claim for Hill and Smith.

However, having found that Idom's intentional infliction of emotional distress claim is based on malicious conduct, the Court finds that the School District is immune from liability. The MTCA provides that "a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice. . . ." Miss. Code Ann. § 11-46-5(2) (1992). Therefore, the Court will grant summary judgment in favor of the School District.

6. Defamation

The defendants argue that Idom has not shown any publication of any information that would defame her. Idom counters that she suffered damage to her reputation when she was constructively discharged based on the predictions of test scores because it "caus[ed] parents to question the quality of their children's education." Mem. Opp. 29. Further, she argues that a member of the school board "heard through the 'grapevine' that [Idom] was terminated as Principal because of a failing test score, but was offered a transfer to a lower paying job." Mem. Opp. 30. The defendants seem to argue that whatever information the school board member heard was not enough to rise to a level of defamation.

The required elements of a claim for defamation in Mississippi

are: "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." Franklin v. Thompson, 722 So. 2d 688, 692 (Miss. 1998). "The Mississippi Supreme Court has held that 'truth is a complete defense to an action for libel.' 'In defamation actions, then, the threshold question . . . is whether the published statements are false.' The plaintiff has the burden of proving the falsity of the statement." Neilson v. Dawson, 155 So. 3d 920, 923 (Miss. Ct. App. 2014) (quoting Blake v. Gannett Co., 529 So. 2d 595, 602 (Miss. 1988)) (internal citations omitted).

In her complaint, Idom alleged that "Defendants have, either directly or by ratification, verbally and/or in writing published false information concerning Plaintiff to former co-workers, parents, and members of the community, that Plaintiff was somehow incompetent or any other similar terms, all for the malicious purpose of damaging Plaintiff's reputation and inflicting mental anguish." Compl. ¶ 46. But after discovery, Idom has pointed to no statement made by any of the defendants. In his deposition, the school board member states:

> I did not know until this deposition, until I was subpoenaed, that she was offered a classroom teacher's job. I was –– I had heard that she was offered a transfer, but she could not stay on as a principal. And

> the rest of the grapevine said that the superintendent had made the statement, no one is going to be a principal in my schools with a failing test score. And that was what I hear. But to say that I knew that she was offered a classroom teacher's job or was threatened with termination if she agreed to stay on, I was not.

Attachment Ex. E 17-18, ECF No. 50-4. He explicitly did not have knowledge of any allegedly defamatory statements before his deposition. Further, to the extent that Idom argues that her constructive discharge can be considered defamation, the law makes clear that a statement is required.

But even assuming arguendo that this information qualifies as a published statement and that it is false (though the Court cannot determine what part of the school board member's information might be false), Idom "must clear two additional burdens[:} . . . First, the words employed must have clearly been directed toward the plaintiff. Beyond that, the defamation must be clear and unmistakable from the words themselves and not be the product of innuendo, speculation or conjecture." Blake, 529 So. 2d at 603. Nowhere does the school board member say he heard that Idom was incompetent, so that the defamation from his information was not clear but a result of conjecture.

Therefore, the Court will grant the motion for summary judgment as to this claim.

7. Breach of Contract

Idom brings claims for breach of her employment contract and for breach of the unwritten contract created by the employee

23

handbook. The School District did not address either breach of contract claim in its original memorandum in support of its motion, but stated succinctly in its reply that these claims "fail as [Idom] has not evidenced a constructive discharge." Reply 5, ECF No. 51.

The elements of a breach of contract claim in Mississippi are: "(1) the existence of a valid contract and (2) breach by the defendant." Smith v. Antler Insanity, LLC, 58 F. Supp. 3d 716, 723 (S.D. Miss. 2014) (citing Bus. Commc'ns, Inc. v. Banks, 90 So. 3d 1221, 1224-25 (Miss. 2012)). Idom had a valid contract with the School District to serve as principal of an elementary school within the district. Further, her constructive discharge, if true, would breach that contract. The Court found above that whether Idom was constructively discharged requires resolution by a factfinder.

The School District also seems to imply that these claims are subject to the MTCA notice requirement, but this is incorrect. "While a claim for breach of an implied contract provision is covered by the MTCA and this would be subject to the MTCA's pre-suit notice provision, this requirement does not apply to actions for breach of the express terms of a contract." Simpson v. Alcorn State Univ., 27 F. Supp. 3d 711, 719-20 (N.D. Miss 2014) (citing City of Jackson v. Estate of Stewart, 908 So. 2d 703, 711 (Miss. 2005)) (internal citation omitted). The Court finds that both contract claims are based on express rather than implied contracts

and are therefore not subject to the MTCA. Therefore, the Court
will deny summary judgment on the breach of contract claims as to
the School District.

As for Hill and Smith, however, the Court finds that neither
individual is a party to the contract. In her briefing, Idom only
refers to her contract with the School District, not a contract
between her and Hill or Smith. See Mem. Opp. 31. Further, she
states that "Hill . . . had no authority to enter into a[n]
employment contract without Board approval." Mem. Opp. 24. If the
superintendent could not contract under his own authority, then
certainly his deputy could not either. Therefore, the Court will
grant summary judgment in favor of Hill and Smith on this claim.

8. Tortious Interference

Based on the face of her complaint, Idom makes claims for both
tortious interference with contract and with business relations. In
their motion for summary judgment, the defendants argue that these
claims are subject to the MTCA and that Idom did not comply with
the notice requirements. Idom disagrees.

Two recent Mississippi Supreme Court cases reach opposite
conclusions on the same question: whether the MTCA applies to
claims for tortious interference. Compare Zumwalt v. Jones Cnty.
Bd. Of Supervisors, 19 So. 3d 672, 688 (Miss. 2009) ("With respect
to the claim of tortious interference with business relations
and/or contracts, the MTCA does not apply.") with Whiting v. Univ

of So. Miss., 62 So. 3d 907, 916 (Miss. 2011) (finding that "the MTCA covers both tortious breach of contract and breaches of implied terms and warranties of a contract"). Mississippi's federal courts have recognized the contradictory case law concerning whether claims for tortious interference fall within the scope of the MTCA. See Johnson v. City of Shelby, Miss., 743 F.3d 59, 63-64 (5th Cir. 2013), reversed on other grounds by 135 S. Ct. 346, 346 (2014); Dearman v. Stone Cnty. Sch. Dist., No. 1:13cv267, 2014 WL 3747600, at *2 (S.D. Miss. 2014); Pickett v. Panola Cnty., Miss., No. 3:13cv95, 2015 WL 416967, at *6 (N.D. Miss. Jan. 30, 2015). And the Fifth Circuit has announced that it follows Whiting "because [it] appl[ies] 'the latest and most authoritative expression of state law applicable to the facts of a case." Johnson, 743 F.3d at 64 (quoting Santibanez v. Wier McMahon & Co., 105 F.3d 234, 239 (5th Cir. 1997)).

It does not appear from the case law post-Whiting whether a court has addressed how Whiting applies to claims for tortious interference with business relations. Zumwalt expressly referred to both tortious interference with contract and business relations, 19 So. 3d at 688, but Whiting only referred to claims for tortious interference with contract, 62 So. 3d at 916. One unpublished Fifth Circuit case has affirmatively cited to Zumwalt since Johnson and Whiting for the proposition that the MTCA does not apply to this claim. See Pugh v. Byrd, 574 F. App'x 505, 510 (5th Cir. 2014) (per

curiam). But the Court is not bound by this decision.

The core elements[3] of a claim for tortious interference with either contract or business relations are identical:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

Par Indus., Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998) (contract); MBF Corp. v. Century Bus. Commc'ns, Inc., 663 SO. 2d 595, 598 (Miss. 1995) (business relations). Further, the Court's logic in Whiting turns on the phrase "any wrongful or tortious act or omission or breach of . . . contract." 62 So. 3d at 916 (quoting Miss. Code Ann. § 11-46-3(1) (1993)). The inclusion of the "any wrongful or tortious act" language reveals that the Mississippi Supreme Court's reasoning is not limited to breach of contract scenarios. Thus, the Court finds that Whiting's holding extends to claims for tortious interference with business relations, as well, and, therefore, this claim is subject to the MTCA.

Lastly, Idom argues that a claim for malicious interference with employment is not subject to the MTCA. Though the Court cannot identify this claim as separate from the above claims based on the

---

[3] In a tortious interference with contract claim, a plaintiff must also prove the existence of a valid contract and that the contract would have been performed but for the interference. Par Indus., 708 So. 2d at 48.

face of the complaint, this argument fails regardless. Idom relies on a Northern District case which holds exactly as she says. See Papagolos v. Lafayette Cnty. Sch. Dist., 972 F. Supp. 2d 912, 933 (N.D. Miss. 2013) ("The law is clear that a malicious interference with employment claim is not governed by the MTCA."). However, one of the Southern District cases cited by Papagolos for this proposition states that "[i]n Mississippi, a claim for malicious interference with Plaintiff's employment is the same as asserting a tortious interference with contractual relations claims." King v. Bd. of Trustees of State Insts. of Higher Learning of Miss., No. 3:11cv403, 2012 WL 2870789, at *4 (S.D. Miss. July 11, 2012). Therefore, the Court finds that this claim is not separate from tortious interference with contract and is subject to the MTCA.

Thus, both claims for tortious interference are subject to the MTCA and its notice requirements. Because Idom does not argue that she has complied with this requirement, the Court will award summary judgment in favor of the defendants on this claim.

### III. Conclusion

First, the Court has found that her claim for Title VII racial discrimination based on her constructive discharge survives but only against the School District.

Second, the Court has found that her claim for violation of her due process rights does not survive because she has not shown a constitutional violation.

28

Third, the Court has found that her claim for violation of equal protection rights survives against the School District because she has alleged her constructive discharge occurred pursuant to a policy, but her claims against Hill and Smith are, with consent of the parties, held in abeyance pending resolution at trial.

Fourth, Idom's claims for negligent hiring and supervision do not survive because Idom did not argue that they should.

Fifth, the Court finds that Idom's claim for negligent infliction of emotional distress does not survive because she did not argue that it should. The Court, however, reached divergent results for her claim for intentional infliction of emotional distress. It goes forward against Hill and Smith because it is not subject to the requirements of the MTCA, but it fails as against the School District because the School District is immune from liability for this claim.

Sixth, the Court has found that Idom failed to show the necessary elements of a claim for defamation.

Seventh, the Court finds that her claims for breach of contract survive because they are not subject to the MTCA and because defendants did not argue they should be dismissed in their original memorandum in support of their motion; but the Court finds that neither Hill nor Smith were parties to the contract and should therefore be granted summary judgment.

Eighth and finally, the Court finds that Idom's claims for tortious interference with contract and for tortious interference with business relations do not survive because they are subject to the MTCA and she has not complied with the notice requirements.

IV. Order

IT IS HEREBY ORDERED THAT the Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

FURTHER ORDERED THAT the issue of whether Defendants Frederick Hill and Tanisha W. Smith in their individual capacities are entitled to qualified immunity in defense against the claim for violation of Plaintiff's equal protection rights is, with the consent of the parties, held in abeyance pending resolution during trial.

SO ORDERED this the 14th day of July 2015.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE
