IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CINDY IDOM                                         PLAINTIFF

VS.                        CIVIL ACTION NO: 5:14-cv-38(DCB)(MTP)

NATCHEZ-ADAMS SCHOOL DISTRICT, et al.              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause came on for trial on September 14 through 18, 2015, and the jury rendered a verdict for the plaintiff (docket entry 94).  Counsel for plaintiff filed a motion for front pay, attorney fees and costs, prejudgment interest, and post-judgment interest **(docket entry 99)**, as well as a bill of costs (docket entry 98).  The Court postponed Final Judgment until the motion could be briefed by the parties and decided by the Court.  A hearing on the motion was held on December 2, 2015, initial briefing was completed on December 16, 2015, and additional briefing was completed on January 13, 2016.  Having carefully considered the motion, the parties' oral arguments and memoranda as well as the applicable law, and being fully advised in the premises, the Court finds as follows:

This Title VII employment race discrimination and state law action alleged racial discriminatory conduct and harassment during the 2012/2013 school year by the defendants, Superintendent Frederick Hill ("Hill") and Deputy Superintendent Tanisha W. Smith ("Smith"), both African-American, on behalf of the defendant

employer, the Natchez-Adams School District ("the District"), and alleged that the plaintiff, Cindy Idom ("Idom"), a Caucasian, was terminated / constructively discharged from her Principal position on July 5, 2013.

The matter was initiated on October 16, 2013, when Idom filed a charge of discrimination with the EEOC.  On or about February 12, 2014, the EEOC issued a Notice of Right to Sue.  Idom filed her Complaint with this Court on May 14, 2014.  The following causes of action were alleged against the defendants: (1) Race Discrimination under Title VII and § 1981; (2) Equal Protection and Due Process rights violations under § 1983; (3) Breach of Employment Contract; (4) Breach of District Policies and Procedures; (5) Tortious Interference with Employment; (6) Intentional and Negligent Infliction of Emotional Distress; (7) Defamation; and (8) Negligent Hiring, Retention, Supervision and Control.

A five-day jury trial commenced on September 14, 2015, wherein the following causes of action were submitted to the jury: (1) Breach of Employment Contract; (2) Race Discrimination under Title VII and § 1981; (3) Equal Protection violation under § 1983; and (4) Intentional Infliction of Emotional Distress.

On September 18, 2015, the jury rendered its verdict and found in favor of Idom against the Defendants for all causes of action submitted to the jury, and awarded damages as follows: (a) $84,650.00 against the District for breach of employment contract;

2

(b) $271,737.00 against the District for Title VII race discrimination, including $171,737.00 for back pay (lost wages and benefits from July 5, 2013 until the date of the verdict, inclusive of the amount awarded for one year breach of contract) and $100,000.00 for compensatory damages (including mental anguish and emotional distress injuries); (c) $271,737.00 against the District, and $0.00 against Hill (individually), for §1983 Equal Protection rights violation (inclusive of back pay and emotional damages awarded); and (d) $75,000.00 against Hill (individually), and $25,000.00 against Smith (individually) for intentional infliction of emotional distress.  The total monetary damages awarded to Idom by the jury was in the amount of $371,737.00.[1]

Idom presently seeks an award for attorney fees, costs, prejudgment and post-judgment interest, and front pay.  The defendants oppose the amounts sought for attorney fees and costs, oppose the rate sought for an award of prejudgment interest, oppose any award for post-judgment interest, and oppose any award for front pay.

**I. Attorney Fees**

As the prevailing party, Idom seeks an award of reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §

---

[1] To prevent double counting, the damages awarded for breach of employment contract and for violation of §1983 Equal Protection rights were subsumed within the $271,737.00 award for Title VII race discrimination.

1988, in the total amount of $245,340.00.  For the reasons set forth below, the Court awards Idom $175,210.00 in reasonable attorney fees.

When determining a statutory request for attorney fees under Title VII, federal courts use the "lodestar" method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Id.

"[A]fter calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in [Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)]." Black v. SettlePou, P.C., 732 F.3d 492, 502 (5th Cir. 2013) (quotation omitted).  The Johnson factors include:

(1) the time and labor required;

(2) the novelty and difficulty of the issues in the case;

(3) the skill requisite to perform the legal services properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee charged for those services in the relevant community;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

4

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

Id. at 502 n.7 (citing Johnson, 488 F.2d at 717-19). The most important factor in civil rights cases is the degree of success or "results obtained." Hensley, 461 U.S. at 434. The Supreme Court has cautioned, however, that "the lodestar method yields a fee that is presumptively sufficient." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010).

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's

<u>adversary</u> pursuant to statutory authority." Copeland v. Marshall, 205 641 F.2d 880, 891 (1980)(<u>en banc</u>)(emphasis in original).

<u>Hensley</u>, 461 U.S. at 433-34 (1983).

Idom submitted affidavits by her counsel contending that attorneys Ken R. Adcock (with 34 years of experience) and Mark D. Morrison (with 24 years experience) should receive an hourly rate of $300 per hour, that associate William C. Ivison (with 3 years of experience) should receive an hourly rate of $200 per hour, and that paralegal work should receive an hourly rate of $100 per hour. Idom seeks a total of 1,028 billable hours. She also seeks an additional $10,000 in attorney fees in connection with the attorney fee application.

The defendants contend that the requested hourly rates are excessive, and submit an affidavit by local counsel suggesting that the hourly rates should be reduced to $225 per hour for Mr. Adcock, $125 per hour for Mr. Ivison, $90 per hour for paralegal work, and that all of Mr. Morrison's entries should be eliminated. The defendants also contend that much of Idom's counsel's time is excessive, duplicative and unbillable. They seek reduced numbers of billable hours as follows: 264.3 hours for Mr. Adcock, 291.2 hours for Mr. Ivison, 6.7 hours for paralegal time, and suggest that a reasonable fee award would be $96,470.50.

The "reasonable hourly rate" for the lodestar calculation is "calculated according to the prevailing market rates in the

relevant community" and must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" McClain v. Lufkin Indus., Inc., 649 F.3d 374, 381 (5th Cir. 2011)(citation omitted). Thus, the Fifth Circuit has interpreted rates "'prevailing in the community' to mean what it says," and has "required district courts to consider the customary fee for similar work 'in the community.'" Id. (citations omitted).  "Generally, the reasonable hourly rate for a particular community is established though affidavits of other attorneys practicing there."  Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002).

This Court therefore finds that the reasonable hourly rates to be considered will be those of attorneys within the Western Division of the U.S. District Court for the Southern District of Mississippi.  As stated at the hearing, the Court finds that Mr. Ivison's requested hourly rate of $200 an hour is excessive for a lawyer with 3 or 4 years experience, and finds that $175 an hour is reasonable.  The Court further finds that Mr. Adcock's and Mr. Morrison's requested rate of $300.00/hour, while not outrageous for attorneys in Jackson, Mississippi, is excessive in the Western Division, and finds that $275 an hour is a reasonable hourly rate for these attorneys.  The Court agrees with the plaintiff that the requested hourly rate of $100.00/hour for paralegal entries is reasonable.

The "hours reasonably expended" for the lodestar calculation should exclude hours that were not "reasonably expended," including "hours that are excessive, redundant, or otherwise unnecessary." Hensley, 431 U.S. at 434.  Further, in determining the number of "hours reasonably expended," the Court must consider whether the fee applicant "exercised billing judgment," which is shown by the attorney writing off hours that are "unproductive, excessive, or redundant."  Saizan v. Delta Concrete Products Co., 448 F.3d 795, 799 (5th Cir. 2006).  However, the Court should not act as "green-eyeshade accountants", as "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  Fox v. Vice, 131 S. Ct. 2205, 2216 (2011).

There are several relevant Johnson factors that the Court considers in determining a fair and reasonable attorney fee award. This Title VII employment discrimination action was more difficult and complicated than a normal civil lawsuit.  The legal issues in this matter included federal constitutional and statutory race discrimination law, state statutory education employment law, and common law contract issues.  This required a fair amount of skill from the attorneys on both sides, and the Court finds that Idom's attorneys are good attorneys who performed well in litigating this case from its inception to the present.

Idom obtained excellent results and was successful at trial. She obtained a jury verdict in her favor on all claims that were

submitted to the jury, and the jury returned a verdict for all requested damages.  The case required a substantial amount of time in trial preparation and in preparing complicated jury instructions.  There was an extensive amount of research conducted in this case; however, not many depositions were conducted.

Upon due consideration of the <u>Johnson</u> factors, the Court finds that the 707 hours requested by Mr. Ivison are excessive because there was duplication of work with other attorneys and work that the Court considers as clerical.  The Court finds 480 hours to be a reasonable amount of hours expended by Mr. Ivison; therefore, the award for Mr. Ivison's fees shall be 480 hours times $175.00/hour, equaling $84,000.00.  The Court also finds that 306.2 hours expended by Mr. Adcock and 3 hours expended by Mr. Morrison are reasonable; therefore, the award for Mr. Adcock's fees shall be 306.2 hours times $275.00/hour, equaling $84,205.00, and the award for Mr. Morrison's fees shall be 3 hours times $275.00/hour, equaling $825.00.  The Court finds that the paralegal time spent of 11.8 hours is reasonable, and the Court grants the $1,180.00 in fees requested for paralegal entries.

At the hearing, counsel for Idom requested an additional $10,000.00 for attorney fees in connection with the attorney fee application.  The court finds that $5,000.00 is a sufficient sum to cover the present motion (including the attorney fee application), oral argument on the motion, post-hearing briefing and supplemental

briefing, and the submission of proposed findings of fact and conclusions of law to the Court.

Accordingly, the Court awards Idom $175,210.00 in reasonable attorney fees reasonably expended by her counsel in this case.

## II. Costs

Idom seeks all costs and expenses reasonably incurred by her attorneys in the course of litigation, in the total amount of $12,474.27. These costs are divided into three categories: (1) taxable costs, (2) non-taxable costs, and (3) expert costs. The Court will address each category of costs separately. For the reasons stated below, the Court awards Idom all requested costs and expenses in the amount of $12,474.27.

## A. Taxable Costs

Idom seeks the recovery of $4,474.25 in "taxable" costs under Fed.R.Civ.P. 54(d)(1) and 28 U.S.C. § 1920, through a separately-submitted Bill of Costs (docket entry 98). Courts are given wide discretion in determining taxable costs to award, but are limited to awarding the costs specifically enumerated in 28 U.S.C. § 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Under § 1920, a court may tax the following costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of

> interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Idom's counsel has submitted an affidavit setting forth the taxable costs alleged to be reasonable and necessary to litigate this case, supported by an attached statement and itemization of all costs and expenses actually incurred by Idom's counsel in this case.  The taxable costs sought include (a) $2,440.50 in fees for deposition transcripts, (b) $400.00 in filing fees for filing the Compliant, (c) $175.00 in service of process fees by sheriffs for deposition and trial subpoenas to witnesses, (d) $483.50 in trial witness fees, and (e) $975.25 in photocopy costs (3,901 pages at $.25/page).  The defendants do not dispute that Idom is generally entitled to recover taxable costs, and do not dispute the amount and support for the requested taxable costs for filing fees, service of process fees, and trial witness fees. Therefore, the Court will award Idom $400.00 for filing fees, $175.00 for service of process fees, and $483.50 for witness fees, as taxable costs under 28 U.S.C. § 1920.

The defendants do dispute the amount and validity of Idom's requested taxable costs associated with deposition transcripts and photocopies.  Regarding deposition transcript costs, the defendants claim that Idom fails to prove that the transcripts were "necessarily obtained for use in the case."  Deposition costs are

11

taxable and recoverable as expenses where "a deposition could reasonably be expected to be used for trial preparation," and costs for deposition transcripts are recoverable if "necessarily obtained for use in the case." <u>Fogleman v. ARAMCO</u>, 920 F.2d 278, 285 (5th Cir. 1991)(citations omitted). "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court[,]" and the court is afforded "great latitude in this determination." <u>Id</u>. at 285-86 (footnotes omitted). Idom's deposition transcript costs are supported by an attached itemization of the taxable costs incurred, which particularly describes the amount and necessity of the deposition transcript costs Idom seeks to recover. The Court finds that the deposition transcripts were necessarily obtained for use in this case by Idom's counsel. The Court also notes that Idom's attorneys used the deposition transcripts for impeachment purposes in the cross examination of defendants Hill and Smith. Accordingly, the Court will award Idom $2,440.50 for depositions transcripts as taxable costs under 28 U.S.C. § 1920.

Regarding plaintiff's photocopy costs, the defendants contend that these are not adequately supported and that the rate used by Idom of $.25/page should be reduced to $.10/page. Copying costs are "subject to the same standard as that of copying depositions: reproductions necessarily obtained for use in the case are included within taxable costs, provided that the prevailing party

demonstrates that necessity." Fogleman, 920 F.2d at 286 (citations omitted). "This is usually done by submitting an affidavit attesting that the amount claimed is correct and that the services giving rise to the costs were actually and necessarily performed." Kmart Corp. v. Kroger Co., 2014 WL 3510488, *8 (N.D. Miss. July 14, 2014)(citing 28 U.S.C. § 1924).  In this case, Idom's costs for photocopies are supported by her counsel's submitted affidavit attesting that the amounts claimed for photocopy charges are correct and that the photocopies were actually and necessarily incurred in the litigation of this case.  The photocopy costs are further supported by an attached firm invoice and an attached itemization of the taxable costs which describes the date, amount and reason for the photocopies incurred.  The photocopies are categorized as being for use in discovery production, depositions, trial, or filings in this case.  The Court is of the opinion that the photocopy costs are properly supported, and as a result are recoverable under 28 U.S.C. § 1920.

Finally, the Court accepts the firm's rate of $.25/page for copying costs as a reasonable rate that is customarily charged and actually incurred by the law firm.  Accordingly, the Court will award Idom $975.25 in photocopy costs as taxable costs under 28 U.S.C. § 1920.  In sum, the Court is of the opinion that Idom's Bill of Costs (docket entry 98) is well-taken and should be granted, and awards Idom the full recovery of $4,474.25 in taxable

costs pursuant to 28 U.S.C. § 1920.

**B. Non-Taxable Costs**

Idom seeks non-taxable and non-expert costs, pursuant to 42 U.S.C. § 2000e-5(k), in the amount of $4,100.02.  "In Title VII cases, a district court has an additional source of authority for applying attorney's fees and costs, 42 U.S.C. § 2000e-5(k)."  <u>Mota v. Univ. of Texas Houston Health Sci. Ctr.</u>, 261 F.3d 512, 529 (5th Cir. 2001).  The Fifth Circuit "has interpreted the attorney's fee allowed by Section 2000e-5(k) to include reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs."  <u>Id</u>. (internal quotations and citation omitted).  Idom seeks the following out-of-pocket expenses incurred by her attorneys in the course of their representation in this case: (a) $120.45 for obtaining medical records, (b) $3,905.84 in mileage, meals and travel costs, (c) $24.59 in FedEx courier fees, and (d) $49.14 in postage.  The defendants object to certain amounts of the requested costs as being unreasonable.  It is the opinion of the Court, however, that the requested non-taxable costs are reasonable and necessarily incurred by Idom's attorneys during litigation, and are sufficiently supported by an affidavit of Idom's counsel and the attached firm billing records.  Accordingly, the Court exercises its discretion and awards Idom $4,100.02 in

14

non-taxable costs, pursuant to 42 U.S.C. § 2000e-5(k).

## C. Expert Costs

Idom seeks the recovery of $3,900.00 in expert fees, pursuant to 42 U.S.C. § 2000e-5(k), reasonably incurred for services of Idom's economics expert, Dr. Gerald Lee.  According to the affidavit of Idom's counsel, Dr. Lee's services and opinions were necessary to prosecute the plaintiff's case, and included the expert's calculations and testimony at trial concerning Idom's claims for lost wages, lost retirement benefits, and prejudgment interest.  Most of these expert fees and costs are not objected to by the defendants.

The defendants do, however, object to that portion of the expert fees, in the amount of $1,200.00, which compensate Dr. Lee for his attendance at trial.  The defendants claim that the requested amount should be reduced to a $40.00 attendance fee under 28 U.S.C. § 1821.  For the reasons stated below, the Court does not agree with the defendants' contention, and will award Idom the full amount of $3,900.00 in expert fees.

Concerning expert witness trial fees, the Supreme Court has held "that when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 438 (1987).  Since Crawford was decided, the wording of

15

the applicable attorney fee statutes has been changed, and both 42 U.S.C. § 1988 and Title VII explicitly allow an award for all expert fees to the prevailing party.[2]  Accordingly, all expert fees and expenses are taxable to the losing party in employment discrimination cases under § 1988 and 42 U.S.C. § 2000e-5(k), including the expert's trial attendance costs which may exceed the daily fees paid to witnesses under § 1821(b).  Alexander v. City of Jackson, Miss., 2011 WL 1059293, *16-17 (S.D. Miss. Mar. 21, 2011). The Court, in its discretion, awards Idom all requested expert fees (including trial attendance costs) in the amount of $3,900.00.

## III. Prejudgment Interest

Idom seeks prejudgment interest at 8% per annum, compounded annually, on all monetary damages awarded by the jury, particularly (a) the $271,737.00 Title VII award, to accrue from July 5, 2013 (the date of Idom's discharge) until entry of final judgment; and (b) the $100,000.00 state-law intentional infliction of emotional distress award, to accrue from May 14, 2014 (the date the Complaint was filed) until entry of final judgment.

The defendants oppose the rate of interest, and suggest that

---

[2] 42 U.S.C. § 1988 provides, in subsection (c), that "[i]n awarding attorney's fee under subsection (b) of this section ..., the court, in its discretion, may include expert fees as part of the attorney's fee."  In addition, 42 U.S.C. § 2000e-5(k) provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs ...."

the current federal prime rate of interest[3] should be used.   The
defendants further oppose granting prejudgment interest on Idom's
state law emotional damages award of $100,000.00.

Pursuant to 42 U.S.C. § 2000e-5(g), Idom is entitled to
prejudgment interest on her Title VII jury award.   See Loeffler v.
Frank, 486 U.S. 549, 564 (1988).   "District courts generally should
calculate interest on back pay and past damages [beginning] on the
date of the adverse employment action."   Thomas v. Texas Dep't of
Criminal Justice, 297 F.3d 361, 372 (5th Cir. 2002).   Furthermore,
"[p]rejudgment interest should apply to all past injuries,
including past emotional injuries."   Id.   "The purpose of
prejudgment interest is to provide parties with compensation for
the detention of money overdue ... [that] compensates for the time
value of money, and thus is often necessary for full compensation."
In re Guardianship of Duckett, 991 So. 2d 1165, 1182 (Miss. 2008)
(quotations and citations omitted).   Accordingly, "it is necessary
to compound prejudgment interest in order to compensate for the
time value of the money due as damages from the date the claim
arises to the date the judgment is entered."   Id., at 1183.

The Court must first decide the amount of damages awarded
under Title VII to which prejudgment interest is applied.   The
parties do not dispute that prejudgment interest applies to Idom's
Title VII award of $171,737.00 in back pay (past lost wages and

---

[3] As of January 15, 2016, the federal prime rate is 3.50%.

17

benefits).

As for the jury's award to Idom of $100,000.00 in compensatory damages (including past mental anguish and emotional distress), it would seem that plaintiff and defendants agree that "[p]rejudgment interest should apply to all past injuries, including past emotional injuries." Defendant's Response (docket entry 108), p. 3 (citing Thomas v. Texas Dept. of Crim. Justice, 297 F.3d 361, 372 (5th Cir. 2002)(also cited by plaintiff). See also Dinet v. Hydril Co., 2006 WL 3904991, *13 (E.D. La. Nov. 22, 2006)(following Thomas).

The parties dispute whether prejudgment interest also applies to Idom's Title VII award of $100,000.00 in compensatory damages (including past mental anguish and emotional distress). In Thomas v. Texas Dep't of Criminal Justice, 297 F.3d 361 (5th Cir. 2002), the plaintiff was awarded back pay and compensatory (emotional injuries) damages under Title VII for employment discrimination, and the parties disputed whether prejudgment interest should apply to the entire amount. In affirming that prejudgment interest applies to all past injuries awarded under Title VII, including back pay and past compensatory damages for emotional injuries, the Fifth Circuit held:

> Prejudgment interest should apply to all past injuries, including past emotional injuries. Courts should award prejudgment interest whenever a certain sum is involved. Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole. ... Because the jury found that the [plaintiff] suffered past

18

emotional injuries, the district court was compelled to award prejudgment interest on those past injuries.

<u>Id</u>. at 372.

In this case, the jury found that Idom suffered past injuries under Title VII, and awarded her $171,737.00 in back pay and $100,000.00 in compensatory damages (for past emotional injuries). Accordingly, following <u>Thomas</u>, the Court awards prejudgment interest to apply to all past injuries awarded under Title VII in the amount of $271,737.00.

The Court requested the parties to brief the effect, if any, that the Mississippi Tort Claims Act ("MTCA"), specifically Miss. Code Ann. 11-46-15, might have on awards of pre-judgment interest and attorney fees in connection with torts of intentional infliction of emotional distress committed by School District employees Hill and Smith. The relevant portion of the statute states:

> No judgment against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages or <u>for interest prior to judgment, or an award of attorney's fees</u> unless attorney's fees are specifically authorized by law.

Miss. Code Ann. 11-46-15(2)(emphasis added).

The defendants acknowledge that torts which require proof of malice as an essential element are excluded from the MTCA under this section. <u>See</u> <u>Zumwalt v. Jones County Bd. of Supervisors</u>, 19 So.3d 672, 688-89 (Miss. 2009)(claim of tortuous interference with

19

business contracts requires proof of malice and is, therefore, not
subject to the MTCA).  The defendants argue, however, that there
was no finding of malice by the jury since the jury verdict form
did not include a malice finding or component.  The defendants
contend that without a finding of malice the plaintiff is not
entitled to pre-judgment interest nor to attorney fees on the
intentional infliction of emotional distress claim, and, moreover,
is not entitled to a verdict on the intentional infliction of
emotional distress claim itself since it requires a finding of
malice.

The plaintiff points out that the jury instructions define
malice and instruct the jurors that malice is a necessary element
of Idom's intentional infliction of emotional distress claim.  See
Jury Instruction No. 12.  The Court finds that although the Jury
Verdict does not repeat the instructions concerning malice, the
instructions themselves required a finding of malice before the
jury could find for the plaintiff on the intentional infliction of
emotional distress claim.  Therefore, because the jury found
malice, the Court finds that Miss. Code Ann. 11-46-15(2) does not
apply, and the plaintiff is entitled to both pre-judgement interest
and attorney fees on this claim.

The Court must also decide the rate of prejudgment interest.
The trial court has discretion in the decision to award prejudgment
interest on Title VII awards.  <u>Sellers v. Delgado Cmty. Coll.</u>, 839

F.2d 1132, 1140 (5th Cir. 1988).  The Fifth Circuit also advises
that where a federal statute does not establish the rate of
prejudgment interest, Mississippi state law should guide the
court's discretion in determining the rate.  See Hansen v. Cont'l
Ins. Co., 940 F.2d 971, 984 (5th Cir. 1991), abrogated on other
grounds by CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011); Perez v.
Bruister, 54 F.Supp.3d 629, 680 (S.D. Miss. 2014).

Similarly, the Fifth Circuit has held that the Federal rate
set forth in the post-judgment interest statute, 28 U.S.C. §1961
(a), does not govern rates set on prejudgment interest awards.
Hansen, 940 F.2d at 984; see also Boston Old Colony Ins. Co. v.
Tiner Associates Inc., 288 F.3d 222, 234 (5th Cir. 2002)(holding
that "[u]nder 28 U.S.C. §1961(a), in diversity cases, post-judgment
interest is calculated at the federal rate, while pre-judgment
interest is calculated under state law.").

Mississippi Code Annotated section 75-17-7 governs the
application of interest rates to judgments.  That section provides:

> All judgments or decrees founded on any sale or contract
> shall bear interest at the same rate as the contract
> evidencing the debt on which the judgment or decree was
> rendered.  All other judgments or decrees shall bear
> interest at a per annum rate set by the judge hearing the
> complaint from a date determined by such judge to be fair
> but in no event prior to the filing of the complaint.

Miss. Code Ann. § 75-17-7.

Prior to its amendment in 1989, section 75-17-7 required a
judgment interest rate of 8%, but now the rate is left to the trial

judge's discretion.   Mississippi Baptist Health Sys., Inc. v. Kelly, 88 So.3d 769, 782-83 (Miss.Ct.App. 2011).[4]  The Court shall therefore exercise its discretion in favor of awarding the plaintiff the federal prime rate, currently 3.5%, because it is a readily ascertainable figure which provides a reasonable estimate of the interest rate necessary to compensate the plaintiff for the loss of use of her money.  See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436-37 (7th Cir. 1989)(cited in Alberti v. Klevenhagen, 896 F.2d 927, 938 (5th Cir. 1990)).  The Fifth Circuit has also stated that "the cost of borrowing money, which the prime rate represents, is an appropriate prejudgment interest rate."  Alberti, 896 F.2d at 938 (citing In re M/V Vulcan, 553 F.2d 489, 491 (5th Cir.), cert. denied sub nom., Sabine Towing and Transportation Co. v. Zapata Ugland Drilling Inc., 434 U.S. 855 (1977)).

The Court shall award Idom prejudgment interest to be calculated at 3.5% per annum, compounded annually, on the back pay and emotional damages award of $271,737.00, beginning July 5, 2013 until the date the Final Judgment is entered in this cause.

Idom's request for prejudgment interest on her state-law award for intentional infliction of emotional distress is made pursuant to Miss. Code Ann. § 75-17-7, which states that state-law judgments

---

[4] The plaintiff, in her proposed findings of fact and conclusions of law, quoted the former version of the statute, not the current version.

"shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint." Id.  The trial court has discretion whether to award prejudgment interest under Miss. Code Ann. § 75-17-7.  Arcadia Farms P'ship v. Audubon Ins. Co.,77 So.3d 100, 105 (Miss. 2012).  The Court exercises its discretion to deny prejudgment interest on the damages awarded for Idom's state law award of $100,000.00 for intentional infliction of emotional distress.

**IV. Front Pay**

Idom seeks an award for front pay, or future lost wages and benefits, pursuant to 42 U.S.C. § 2000e-5, in the total amount of $193,227.00, including (a) 2 years of future lost wages and benefits in the amount of $170,634.00; and (b) lost future retirement benefits from the Public Employees' Retirement System of Mississippi ("PERS") in the amount of $22,593.00.  Defendants object to the front pay award in its entirety, arguing that Idom was a year-to-year contract employee and had no expectation of contract renewal beyond the terms of her contract.  For the reasons set forth below, the Court will award Idom a front pay award in the total amount of $108,495.00.

Under 42 U.S.C. § 2000e-5, front pay "is a form of equitable relief contemplated by Title VII and is intended to compensate the plaintiff for lost future wages and benefits."  Mota, 261 F.3d at

23

526 (quotations and footnote omitted). "[F]ront pay may be awarded if reinstatement is not feasible where a hostile relationship exists between the employer and the plaintiff." <u>Id</u>. (quotations and footnote omitted).  If awarded in lieu of reinstatement, front pay covers lost compensation and benefits during the period after the date the final judgment is entered.  <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 846 (2001).

Front pay is not a punitive award, but rather "is an equitable remedy and therefore the court, not the jury, determines the amount of the award." <u>Reneau v. Wayne Griffin & Sons, Inc.</u>, 945 F.2d 869, 870 (5th Cir. 1991)(citation omitted).  "Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature." <u>Id</u>. (citation omitted). "The courts must employ intelligent guesswork to arrive at the best answer." <u>Id</u>. (citation omitted).  In determining the front pay award, the court may consider non-discriminatory factors applicable to the facts, such as:

> (1) the length of prior employment,
>
> (2) the permanency of the position held,
>
> (3) the nature of work,
>
> (4) the age and physical condition of the employee,
>
> (5) possible consolidation of jobs and
>
> (6) the myriad other non-discriminatory factors which could validly affect the possible ... post-discharge employment relationship.

24

Id. at 871.

In situations involving race discrimination, reinstatement to the former position is usually the preferred remedy. Giles v. Gen. Elect. Co., 245 F.3d 474, 489 n.27 (5th Cir. 2001). However, this Court finds that reinstatement of Idom to her former Principal position is not feasible in this case. The testimony and evidence at trial revealed that the employment relationship was in a state of acrimony, and that there was an abusive and hostile work environment. For this reason, reinstatement would not be feasible. The Court will therefore consider a front pay award for Idom's future lost wages and benefits from the date final judgment is entered.

In awarding a front pay award for future lost wages and benefits, the Court first considers applicable factors to determine an appropriate front pay award. As to the nature and length of Idom's prior employment, she had worked as a teacher or Principal in public schools for approximately 40 years, and had worked fourteen years in the District. She had been the Principal at West Elementary since 2002, and had an unblemished and excellent employment record and evaluations. Idom was a distinguished and qualified educator and Principal, and received many accolades and awards for her past work. As to Idom's physical condition, the Court finds nothing in the record to show that she would be prevented from working because of any physical malady. The Court

finds that she was willing and able to continue working in the District, and Idom testified that she intended to retire at age 65, which would have been after the 2016/2017 school year.

In determining the appropriateness of the extent, if any, of a front pay award, the Court must also consider the plaintiff's reasonable efforts to mitigate damages by seeking substantially equivalent employment. Giles, 245 F.3d at 489. Consequently, the extent of the front pay award should reflect potential future earnings the plaintiff could reasonably be expected to make with future substantially equivalent employment. Jackson v. Host Int'l, Inc., 426 F. App'x 215, 223 (5th Cir. 2011)(citing Giles, 245 F.3d at 489). In this case, the Court finds that Idom reasonably mitigated her damages by exercising reasonable diligence to obtain substantially equivalent work, but was unable to find such employment. However, in the context of determining a front pay award, the issue to consider is whether or not Idom could reasonably be expected to get future employment. She is a well qualified educator and administrator. With reasonable effort, she should be able or should have been able to get employment within a year of the date of the judgment.

In making this decision, the Court recognizes the defendants' argument that Idom was a year-to-year contract employee, and that there was no guarantee that Idom would get additional years of employment. Although Idom may have been subject to not having her

26

employment contract renewed in the future, the Court finds that one year of future lost wages is reasonable.   Front pay awards are speculative by their very nature, and the Court must employ intelligent guesswork to arrive at an award by looking at all the circumstances.   Moreover, the Court has found "no authority suggesting that a Title VII plaintiff is precluded from proving the possibility of additional one-year contracts but for the discriminatory termination of employment."   <u>Jackson-Hall v. Moss Point Sch. Dist.</u>, 2012 WL 1098524, *6 (S.D. Miss. Apr. 2, 2012) (denying a motion <u>in</u> <u>limine</u> attempting to limit the plaintiff-educator's front and back pay award to her one-year contract of employment).

The jury awarded Idom two years of back pay, for the 2013/2014 and 2014/2015 school years.   Based on the considerations and factors described above, the Court awards one year of future lost wages for Idom's salary at her former Principal position for the 2015/2016 school year.   The Court notes that Idom's economics expert, Dr. Gerald Lee, has calculated the present value of Idom's salary for the 2015/2016 school year to be $85,902.00, and his report was introduced into evidence at trial.   The Court shall grant Idom's Motion as to front pay for one year in the amount of $85,902.00.

The plaintiff also seeks compensation for loss of future PERS retirement benefits as a result of the Title VII violations.   Idom

27

seeks lost PERS retirement benefits as a part of front pay, separate from, and in addition to, her loss of wages.  Idom testified that she intended to retire at age 65, but due to the subject termination and constructive discharge from her Principal position by the defendants on July 5, 2013 (when she was 61 years old), she was forced to take early retirement from PERS at age 61 because she no longer had any School District income, and that she then began receiving retirement benefits.  According to the testimony and report of Dr. Lee, Idom's expert economist, the total net present value of Idom's PERS benefits beginning at age 61 until her life expectancy (discounted to present value) is calculated to be $479,614.00.  Had Idom been allowed to continue working with the District until her intended retirement age of 65, and had she during those extra years been allowed to continually contribute toward her PERS retirement plan, Dr. Lee calculates the total net present value of Idom's PERS benefits beginning at age 65 until her life expectancy (discounted to present value) to be $502,207.00.  Dr. Lee opines that the difference between the two net present values of Idom's PERS benefits at age 61 ($479,614.00) and at age 65 ($502,207.00) is $22,593.00, which represents Idom's total loss of future PERS retirement benefits (discounted to present value).  This retirement benefit loss was liquidated and incurred in total when Idom was forced to take early retirement at age 61.

     The plaintiff therefore seeks $22,593.00 of lost retirement

benefits in addition to the one-year front pay award ordered by the Court.  The Court is of the opinion that she should also be awarded the equivalent of one year of PERS contributions at present value, but not full retirement benefits through age 65.  Front pay awards are equitable remedies intended to make the plaintiff whole.  The Court is of the opinion that the front pay award should account for Idom's prospective loss of PERS retirement benefits for one year, in addition to the future wage loss award of one year.

In summary, the Court awards Idom a front pay award of one year of lost wages, $85,902.00, plus the loss of PERS retirement benefits for that one year.  The plaintiff shall submit its expert's calculation of the amount.

**V. Post-Judgment Interest**

Idom seeks an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a).  Post-judgment interest, as opposed to prejudgment interest, is governed by Federal law.  See Boston Old Colony Ins. Co., 288 F.3d at 234.  Further, the Fifth Circuit has held that post-judgment interest on a money judgment is allowable as a matter of right, not as a matter of discretion.  Reeves v. Int'l Tel. & Tel. Corp., 705 F.2d 750, 752 (5th Cir.); see also Gele v. Wilson, 616 F. 2d 146, 148 (5th Cir. 1980)("[p]ursuant to 28 U.S.C. § 1961, all money judgments recovered in civil cases in federal district courts automatically bear interest from the date of entry.").

The relevant statute provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court ... [and] shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." 28 U.S.C. § 1961(a).

Therefore, the Court awards post-judgment interest on the entire monetary award at the Federal rate of interest set forth in 28 U.S.C. § 1961(a).

## VII. Conclusion

For the foregoing reasons,

IT IS HEREBY ORDERED that plaintiff Cindy Idom's Motion for Attorney Fees and Costs, Prejudgment Interest, Post-judgment Interest and Front Pay **(docket entry 99)** is GRANTED IN PART AND DENIED IN PART.

The Court awards the plaintiff the following:

(a) an award for attorney fees in the amount of $175,210.00;

(b) an award for non-taxable and expert costs in the amount of $8,000.02;

(c) an award for front pay in the amount of $85,902.00, plus an award for the loss of PERS retirement benefits for that one year;

(d) prejudgment interest on the back pay and compensatory damages awarded in the amount of $271,737.00, to accrue at 3.5 percent

(3.5%) per annum, compounded annually, from July 5, 2013 until the date of entry of the Final Judgment in this case; and

(e) post-judgment interest calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment, until the date on which the defendants pay the Final Judgment in full;

IT IS FURTHER ORDERED that plaintiff Cindy Idom's Bill of Costs (docket entry 98) is GRANTED.  The Court awards the plaintiff $4,474.25 in taxable costs as requested in said Bill of Costs.

Counsel for plaintiff is requested to prepare a proposed Final Judgment conforming to this Memorandum Opinion and Order.

SO ORDERED, this the 25th day of January, 2016.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE